Hear ye, hear ye. This Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Robert D. McLaren presiding, along with Justice Catherine E. Zinoff and Justice Donald C. Hudson. Cases number 219-0883, Wilmington Savings Fund Society, FSB, Plaintiff Appellant. This is Marduk C. Barrera, N.O., Defendants Appellees. Arguing for the Appellant, Thomas Cassidy. Arguing for the Appellees, Robert J. McGee. Mr. Cassidy, you may proceed. Thank you, Your Honor. And may it please the Court, my name is Tom Cassidy. I'm the Attorney for the Plaintiff Appellant, Wilmington Savings Fund Society. I'm going to start today with a brief background, very brief, then argue on the dismissal of the complaint, and then give an denial of plaintiff's motion to amend the dismissal order so as to dismiss without prejudice. Just as a very brief background, there were three prior foreclosures, all between these same parties. All were based on a declaration of default under paragraph 9A1 of the mortgage at issue, which is a failure to pay principal and interest. The first two were dismissed voluntarily by the plaintiff. The third one was an involuntary dismissal based on the single refiling rule, as is commonly known. The most recent was dismissed in April of 2018. The defendant mortgagors failed to make their June 2018 tax payment and their insurance payments for hazard insurance on the property. The plaintiff made these payments on the defendant's behalf in or around June of 2018. The plaintiff then declared a default for failure to make tax and insurance payments and for failure to reimburse for those taxes and insurance payments in September of 2018. And then the plaintiff filed the instant complaint in December of 2018. Upon dismissal of the third foreclosure, which was, again, based on principal and interest payment default, the circuit court's order dismissing that third foreclosure was with prejudice. And the practical effect, it essentially gave the defendants a loan-free home. Now, they still owed money on the loan, but the practical effect was that the note was unenforceable in the court system. It does not mean that they did not owe the money, just meant that the plaintiff could no longer enforce that loan. So, again, the practical effect is that as long as the defendants at that point, after the third foreclosure was dismissed, the practical effect was as long as the defendants did not sell the house, then they could live there loan-free. They simply needed to pay taxes and insurance. They didn't even want to do that. So, they wanted what was essentially a free house and they wanted someone else to make their tax and insurance payments. Now, I'll move on to my first argument, and that is that the default alleged in this complaint is not the same as the prior defaults, which I wrote extensively about in my briefs. Just in summary, there's a separate paragraph for this particular default in the mortgage, which is paragraph 9A2. And that is, that allows the plaintiff to declare a default. I'm sorry, it allows the mortgagee to declare a default for failure to make tax and insurance payments and for failure to reimburse for those tax and insurance payments made on the mortgagor's behalf. Now, the first sentence of defendant's appellee's brief says, the present mortgage foreclosure lawsuit is the fourth lawsuit against defendants based upon the same default. Now, that is a fundamental misunderstanding of plaintiff's complaint. It is not based upon the same default as the prior three foreclosures. It is based on a different default, which is separate grounds in the mortgage, but also separated by time in that it came seven years later and after all of the prior foreclosures had all been dismissed. Additionally, the 2018 tax and insurance payments that were due, which are the subject of this instant complaint, they could not be accelerated previously in the same way that principal and interest payments can be accelerated when a default is declared for failure to make principal and interest payments. The plaintiff does not have the ability to accelerate tax payments or hazard payments. They're just simply not due yet. When the plaintiff or any plaintiff in a foreclosure accelerates the principal and interest payments and accelerates the loan, that is a different sort of amount due because the full amount is being called due. The plaintiff cannot call the full amount of taxes due for, you know, the next two years or four years or ten years or forever. It is a legal and logical impossibility that this instant 2018 complaint could be based on the same default as the 2012, 2014, and 2017 complaints. Again, because the the defendants in the circuit court and in this court have put a lot of emphasis on the transactional test in the River Park case, which was also confirmed in the Cobo case, which is more recent. River Park versus City of Highland Park and First Midwest Bank versus Cobo. That transactional test puts a lot of emphasis on whether the facts that gave rise to the claim are related in time, space, origin, or motivation. And the plaintiff is arguing that the facts of this, or I should say the operative facts, which is the term that the River Park and Cobo cases, Cobo courts use, the operative facts are different here because they arose out of the failure to make tax and insurance payments in 2018. Those payments were not due until 2018. They could not have possibly been included in the prior complaints because they were not yet due, the plaintiff had not yet made those payments on defendant's behalf. It's a crucial difference to note because it's very different from an acceleration of the full amount of the loan. I want to point out defendant's appellee's brief also says at page 11, quote, in the instant case there is simply no new operative facts under the River Park transactional test. This is also inaccurate. There are new operative facts and the new operative facts are that the taxes were due in June of 2018 and the plaintiff, well, defendant did not pay those, and the plaintiff had to pay them on the defendant's behalf in order to keep its lien viable. The River Park case held that claims based on different factual scenarios are not barred by theories of relief based on the same facts are barred by Rage 2 Dukata. We have kind of an opposite of the River Park case. In this case, the facts are different, but the cause of action is the same. It's a foreclosure of a mortgage, but the facts that gave rise to that claim for foreclosure of a mortgage are different. The River Park case had the same factual scenario, but the plaintiff was trying to assert claims on different theories of relief, and that's again crucial. Also, the prayer for relief in the prior three complaints, so the 2012 complaint, the 2014 complaint, and the 2017 complaint did not seek taxes and insurance. The informational statement, which is in the form complaint, the form foreclosure complaint, it indicates the amounts that are currently due, and the plaintiff in those three prior complaints did indicate amounts that were currently due included attorney's fees, costs, expenses, and advances, if any. But if you look at the prayer for relief in each of those three prior complaints, it does not request the tax and insurance advances. It simply states in the information that is contained in the form complaint, just as it states the legal description, and it states the date of the mortgage. There's a lot of information that is given in a form foreclosure complaint, but the prayer for relief should be what controls, and the plaintiff did not seek those prior tax and insurance amounts in its prior complaints. In any event, even if it's held that it did somehow, which it didn't, but they certainly, the plaintiff in those prior complaints certainly could not have sought the amounts due in 2018 for taxes and insurance, and the amounts that plaintiff paid on defendant's behalf in 2018 in those prior complaints, because they were not yet due. We're not asking now for the pre-2017 tax and insurance advances. We are asking for the post-dismissal of the third complaint. We're asking for the amounts that are due post-April 2018, which is when the third complaint was dismissed. There's something to The plaintiff, as I mentioned at the outset, the plaintiff is still owed the money, but the plaintiff cannot enforce the debt. The plaintiff cannot seek the money that is due on the note, but the plaintiff is still a lien enforcer. The plaintiff still has a lien, and there's various promises made within the mortgage that the defendants have not kept, one of those being that they did not make their tax and insurance payments in June of 2018. Now, the mortgage is not void, and the mortgage has not been released, which is what the defendant's arguments would have you believe. The obligations contained in the mortgage continue, despite the fact that the plaintiff cannot bring a foreclosure on the debt, and the plaintiff cannot seek the amounts due for principal and interest, when the circuit court dismissed the third foreclosure, it did not somehow, in some way, issue a hold harmless or a release or something between these parties in the future. That's an extraordinarily broad interpretation of the dismissal order to think that, and that's what the defendants are arguing here. Also, I'll just briefly mention that a default under the mortgage occurs every time a mortgagor misses a tax or insurance payment. Defendants take great issue with this, saying that they will be stuck in endless litigation forever. Well, if they continue to fail to make their tax and insurance payments, then it's rightful that they should continue to have cases brought against them. There are several different promises made in the mortgage. For example, another one is the due-on-sale clause, and that's generally in most mortgages. If the mortgagor attempts to sell the property, then they're in default without the mortgagee's permission. If the defendants were to try to sell the property tomorrow, I don't think that there would be a dispute that the plaintiff could declare a default. There are various types of defaults in the mortgage. One of them is that the borrowers must make tax and insurance payments and then reimburse the plaintiff if they're made on the defendant's behalf. To hold otherwise would mean that the mortgage and the promises contained therein are of no effect whatsoever. Now that the plaintiff's third foreclosure was dismissed with prejudice, you know, the mortgage is not released and the promises contained therein are still effective. The defendant still has obligations related to the mortgage. I believe your time is up. Okay, I was just, sure, I'll just, go ahead. Justice Hudson, do you have any questions? Yes. Mr. Cassidy, as I understand it then, you're saying that with regards to the plaintiff's default, earlier defaults were based on the alleged failure to pay the mortgage amounts, correct? Yes, they were based on the failure to make principal and interest payments that were due at the time of those complaints. However, the complaint that's an issue now was premised upon an alleged default in the payment of taxes and insurance, correct? That is correct. Taxes and insurance only. So you're saying that that is the basis of why the single refile rule does not apply here? Potentially, correct? That is correct because this instant complaint has raised a new set of operative facts. That could not have, obviously, legally and logically, be contained in the earlier actions because it hadn't occurred yet. Is that your position? That is our position. It is impossible that the plaintiff could have claimed the amounts due for the 2018 tax payment in 2014, for example. The plaintiff, the defendants, seem to rely heavily on the Supreme Court decision in the Cobo case. How do you distinguish this situation from what the Supreme Court decided in Cobo? Well, so that's easy. In Cobo, there were two cases. One was based on a note and one was then on the mortgage in the note. So the plaintiff in that case, in the Cobo case, had already brought a claim on the note and then tried to—or it might be vice versa. It may be that they brought the foreclosure with a deficiency request and then brought a claim on the note. I don't remember exactly which order it occurred, but it was the same default and they were attempting—the Cobo plaintiff was attempting to have it both ways. The Cobo plaintiff was attempting to have a judgment under the note and then also have a judgment of foreclosure with a deficiency, personal deficiency, under the note. And the court in Cobo said, no, you can't do that. You can't refile these same things based on the same facts. So here, in our case, in the instant case, there are different facts at play. And the new facts that occurred after all of the other cases had been dismissed are that the defendants failed to make their 2018 tax and insurance payments. All right. That's all I have at this time. Thank you. Thank you. Justice Zinoff, do you have any questions? Yes. Regarding the applicability of the single refiling rule, isn't the critical inquiry whether there was a private lawsuit to adjudicate rights under the particular instrument at issue here? In other words, the mortgage? Isn't that what we're supposed to be looking at? Yes, to a certain extent. That only goes so far. While we are readily admitting, because it's obvious that we are suing under the same instrument, it's not the same default. The default in the other cases was from seven years ago. And the borrowers or the mortgagors readily admit also that they haven't made a payment since that time, principal and interest payment or otherwise. But currently, after all of those cases were dismissed, new facts arose, which is that the borrowers did not make their tax and insurance payments in 2018. So after all of those prior cases were dismissed, there were new facts, which is what the Cobo case and the River Park case both turn on, is whether there are additional facts and new facts that give rise to a new claim. And we're arguing here that there are new facts and that a new claim has separate causes of action based on separate facts. It just makes sense that in any area of law, not just mortgage foreclosures, but in any situation where you have new facts, then they should give rise to a new claim. But now, didn't the loan payments include not only amounts for principal and interest, but amounts for real estate taxes and insurance? Yes, there were escrow payments involved in the monthly loan payments, but those payments, as far as the prior complaints were concerned, they only went through the end of the prior complaints. So those payments were due at the time and the advances for taxes and insurance were due at the time of the original default, and they were due at the time of the 2014 complaint and the 2017 complaint. So those amounts were due throughout up until that day that the complaints were filed. And they would have been due after the complaints were filed. So for example, in the 2014 complaint, there would have been additional amounts due after the filing of the two years. So the plaintiff is entitled, if it made tax and insurance payments during those two years, to request in its judgment motion and its affidavit the amounts due over those two years after the complaint was filed, but only up until that complaint was dismissed. So the plaintiff could not, at the time it filed a prior complaint, it could not request an infinite number of tax insurance payments for the next hundred years because they weren't due yet. They were due at the time of those complaints, and they were due at the time the plaintiff moved for judgment in one of those complaints. So the plaintiff cannot request and cannot be entitled to an amount that is not yet due for taxes and insurance. And that's why I distinguish accelerating the principal and interest. But the principal and interest is due only because it can be accelerated. Is that right? Because obviously the principal and interest payments, you know, from one year, I mean, you know, from a certain period of time are due then, but they don't encompass the principal and interest payments in the future unless they're deemed accelerated. That's correct. And that's the, that's correct. That's the unique character, the unique character of acceleration. It allows the plaintiff to bring the full amount of the loan due, but that does not apply to the taxes and the insurance payments that are due. It applies only to the principal and interest amounts that are due. So the plaintiff cannot accelerate amounts that are not yet due for taxes and insurance, but the plaintiff does have the terms of the mortgage to accelerate the principal and interest payments that are not yet due, because that's a finite amount. We can determine what that amount is. And that amount is actually due at the time of the complaint. And at the time of judgment, that amount is due. The amounts for the 2018 taxes and insurance were not yet due at the time plaintiff filed his prior complaints. And they were not yet due at the time plaintiff moved for judgment in the one prior complaint. So I'm not saying that there's not a forward-looking analysis at the time of the complaint. The plaintiff is entitled to request the escrow advances that are paid on the defendant's behalf after a complaint is filed, but before judgment, and only up until that point. The future. So now what has happened is the complaints were dismissed, then ultimately dismissed with prejudice. And the obligations under the note still remain, but are unenforceable. But the obligations under the mortgage still remain, but are enforceable. Thank you. I understand. Thanks. I don't have any other questions. Thank you. You mentioned that the plaintiff can't accelerate the payments. Is there anybody who can? No, no. And why is that? Well, so that's the logical argument that I made, that it's simply we don't know if those amounts of those tax payments, for all we know. You don't know what the assessments are? You won't know what the rates are? Well, we certainly didn't know in 2012, for example, what the amounts were for 2018. We could not have requested the 2018 amounts in 2012 because they were not due. And the house may not even be there. I have other questions or comments that you can comment on, because I think you're saying something you said previously. And the next thing I'd like to address is, it would seem that if, in fact, there had been a judgment of foreclosure, a judgment of acceleration, that that judgment would or would it not include the tax payments and the insurance payments up until today's date, assuming that you had gotten the judgment back when you filed or the first complaint was filed? It would have included the amounts up until the judgment date. So the taxes that were paid between the complaint filing and the date of the judgment would have been included in the judgment. And why wouldn't these be included in that judgment? Well, because the cases were all dismissed. So the fact and the reality is that those cases did not make it all the way through a final judgment, a judgment of foreclosure, that is, and they were dismissed. So it's just the reality of the situation is that you keep seeing reality. I would like to look at it slightly different and call it a timeline. And there's timelines here. There's something that's been bothering me, or at least a conundrum, and that is, how is it that if an acceleration clause is declared and the case is non-suited or dismissed without prejudice, how does that acceleration clause remain intact insofar as its enforceability if there is no declaration, no finding, no judgment thereon? How is it that that acceleration clause supposedly survives in order to create the fiction that this is a second or third? So the acceleration clause survives because the amounts claimed, once you accelerate, you cannot decelerate. That's a controversial topic in not just Illinois, but particularly Florida and other states, the whole concept of deceleration. Well, that's not really what's at issue in this case, though, because we're not arguing that the loan was not continually accelerated or that it was decelerated procedurally. You're making an argument based upon the acceleration clause and its downstream effects such that you're attempting to get around the acceleration clause, which supposedly, through a syllogism, concludes with the statement or the holding that because of the acceleration clause, the legal fiction that when you file the next suit or the second suit, supposedly because you accelerated the clause previously, it now is the same identical factual transaction. And my point to you is, how is it the same factual transaction when there was no finding about any transaction and the acceleration clause is not based upon the alleged facts that you're going to prove in order to obtain a judgment? Well, it's not necessary. Go ahead. Sorry. The acceleration clause is going to determine the level and measure and nature and extent of your damages. It's not going to determine liability. So, the acceleration amount is not necessarily different or the same, I should say. It's not necessarily the same in a subsequent filing. So, it could change. It's a breath of relief, which is that I don't have to go through this every time that there's another payment. But the real question is, how is it that res judicata supposedly applies when there was no judgment whatsoever and supposedly it's a new set of facts? How does res judicata apply ever to a new set of facts? Well, so that's what I'm arguing, Judge, is that it doesn't apply here because we do have a new set of facts. And in other cases, in the prior foreclosure, for example, the third foreclosure that was dismissed with prejudice, res judicata applied because the amounts were the same and the default date was the same. And that's what the circuit court judge held, and we did not appeal that. The facts were the same because of the same default date, the same amount was due. Nothing had changed. And here, what I'm arguing is that something had changed. We're not seeking the principle on interest. There's a new default because of the lapse of time and because the Lake County treasurer called an amount due for taxes and insurance and because the insurance company billed us for insurance. Those are new facts. So acceleration, it's not necessarily the case that there are new facts. For example, between the 2012 case and the 2014 case, it may have been that they were the same amount due. There would have, of course, been new tax and insurance payments due, but the same principle and the same interest amounts were due. But you're exactly right that it's impossible for res judicata to apply if facts are different. So in this case, we have new facts, and res judicata does not apply because of those new and in the River Park case. Have you read the Sigler case? I am not familiar with that, Judge. Okay. I have no further questions. Any other questions based upon the questions that have been asked? Not from me. No. Okay. Thank you. Thank you. Counsel, you may proceed. Mr. McGee, I believe it is. Yes. Thank you, Your Honor. Good afternoon, and may it please the court. My name is Robert McGee, and I'm counsel for Defendants Appellees Edson and Martin Barrera. The main issue on appeal is application of the transactional test to a foreclosure lawsuit. The transactional test treats separate claims as the same cause of action if they arise from a single group of operative facts. Plaintiff in this case essentially asserted a modified theory of relief. Instead of suing on the accelerated note, as well as the mortgage amounts due, as was done in the prior three foreclosures, the theory of relief specifically alleges damages of only certain mortgage escrow amounts claimed as unpaid. But as the trial court correctly found, this is simply a different theory of relief for the same cause of action, foreclosure of the defendant's mortgage, seeking the same remedy of foreclosure and judicial sale of the same collateral, the mortgage real estate. In the instant case, the instrumented issue in all four foreclosure actions was the defendant's mortgage instrument. The trial court correctly relied on the Supreme Court's COBO decision and correctly applied the by the Supreme Court in the River Park case. And the plaintiff's complaint was barred under the single refiling rule of section 13217. Plaintiff's predecessor in interest, Wells Fargo Bank, filed two mortgage foreclosure lawsuits against the defendants. These first two lawsuits were essentially identical in all but case number. Wells Fargo then, for whatever reasons, voluntarily dismissed these first two foreclosure lawsuits without prejudice. Wells Fargo then sold off the defendant's mortgage and note, which eventually wound up in the hands of the present plaintiff, Wilmington. The present plaintiff then filed the third foreclosure lawsuit against defendants, but this time slightly changed the claim default. Reality hadn't changed, however. No further payment had been made, nor is the loan ever modified or reinstated by the parties. This third foreclosure was dismissed with prejudice by the Lake County Chancery Court as a violation of the single refiling rule. Plaintiff didn't appeal this dismissal with prejudice, presumably awaiting the outcome of the Supreme Court's pending ruling in COBO. After the Supreme Court affirmed in COBO that the single refiling rule does apply in foreclosure cases, just as it does in all civil cases in Illinois, plaintiff nonetheless filed this fourth foreclosure action. Plaintiff's main contention is that the trial court incorrectly dismissed this fourth lawsuit as barred under the single refiling rule. Essentially, plaintiff argues that it has brought a different cause of action sufficient to avoid the already administered bar imposed by the single refiling rule, but this is not a different cause of action. It is simply a slightly different theory of relief. Instead of amounts for principal interest taxes and insurance, this fourth complaint limits its amounts sought to certain escrow advances for taxes and insurance. However, the foreclosure statute provides that where a plaintiff follows the statutory short form complaint template, a complaint is deemed and construed to also plead requests for its judgment to include all amounts due for advances for taxes and insurance, whether then due or critically whether coming due. Essentially, the deemed allegations include a request for an accounting of all such escrow amounts due and all such escrow amounts coming due in the future. All three prior complaints, as well as the instant complaint, follow the statutory short form template, and the plaintiff admitted as much in its motion to reconsider that the first two lawsuits here did follow and adhere to the statutory short form complaint template. The default now claimed by plaintiffs is not a new or subsequent default. It is the same default that occurred in 2011 when the defendants were unable to make their mortgage payments. The defendant's mortgage payments were not only payments of principal and interest required under the note, they were also payments into escrow to cover taxes and insurance required under the mortgage, and that's at section two of the mortgage. There were no separate defaults under the note and mortgage. There was a single default. The River Park transactional test clarifies the 2011 defaults in the mortgage payments as the single operative default. In this case, the River Park factors demonstrated that these defaults really arise out of the same group of operative facts. The facts are related in time and origin. They form a convenient trial unit and also conform to the expectations and understandings of the parties. Both the lender and the mortgage itself at section two actually require that the defendants make a single unitary payment for both note amounts and mortgage escrow amounts, and the defendants did make that single payment until the time of their defaults in 2011. As the foreclosure statute provides and as chancery courts routinely adhere to, these amounts are a convenient trial unit. Foreclosure judgments almost always include amounts for principal, interest, taxes, and insurance, whether amounts coming due prior to the filing of the suit or whether amounts coming due up into the time of the judgment being entered. Defendants argued the River Park factors in the River Park factors in its response to the motion to dismiss. Essentially, there was no basis presented to the trial court that would have permitted it to deny the defendant's motion to dismiss. While the plaintiff belatedly attempted to address the River Park factors in its reply to the motion to reconsider the dismissal, this was simply too late, and the plaintiff failed to timely raise the issue or preserve the issue. Even in its appellant's brief, plaintiff sidesteps the River Park test and the factors to be considered and simply asserts in a conclusory manner that these must be new operative facts. Regarding the second issue presented on appeal, while the motion to reconsider the dismissal requested leave to amend, leave to file an amended complaint was not requested in the response to the motion to dismiss. Leave to amend was only requested when it was again too late in the plaintiff's motion to reconsider. After the 2619 dismissal order was entered, that was a final order, and there is no right to amend a complaint after a final judgment. Moreover, amendment is not appropriate when there is a dismissal under section 2619. There was no amendment that could cure a violation of the single refiling rule here, nor did plaintiff propose any amended pleading that would have done so. Plaintiff actually provided a proposed amended complaint and it forfeited the issue. The factual reality here never changed. The defendants were not able to make their monthly mortgage payments and defaulted starting in 2011. After that, no further payments were made. The loan was never reinstated, nor was there a modification, a new instrument between the parties. Pursuant to both the mortgage requirements and the lender's requirements, their monthly payment consisted of principal, interest, taxes, and insurance. It would not have been possible, nor would the lender have accepted payments only for principal and interest. They needed to be a unitary payment. If the plaintiff's position is adopted, it would be contrary to the COBO decision, but it would also be impossible to limit the rationale to just this case or foreclosure cases in general. Debt collectors like the plaintiff here would be to purchase defaulted debts and file and dismiss lawsuits without limit, as long as they can allege a supposedly new or subsequent default under a contract. Illinois law doesn't permit people to be subjected to multiple and successive lawsuits over matters that could have been decided in the first two lawsuits. Plaintiff's rationale essentially requires that the single refiling rule of Section 13217 is a dead letter. There will always be new defaults under a mortgage, as real estate taxes are due twice a year and insurance requirements are an ongoing obligation under the mortgage. This would also apply seemingly to statutes of limitations on a foreclosure claim, as a lender could always argue the statute had not yet begun to run on a different and new default for yearly taxes or insurance later coming due. But the transactional test under Section 13217 is not a dead letter in foreclosure cases or collection litigation that was reaffirmed in COBO. There has to be an end to litigation, both to preserve judicial resources and time and to protect consumers from endless, repetitive, and financially draining litigation that can simply be filed, dismissed, and refiled ad infinitum. The trial court correctly found plaintiff was not entitled to a fourth bite at the apple. To conclude, defendants respectfully request that the court affirm the dismissal by the trial court. Thank you. Thank you. Justice Hudson, do you have any questions? Mr. McGee, is it true that in this case the alleged failure to make payments was for insurance and property taxes? That was the sole alleged default claimed in the fourth foreclosure complaint. They were not seeking payment of any principal interest at that time, is that correct? I believe that's correct, yes. When you allude to receiving compensation in the earlier cases that were filed, how would they be able to seek and obtain compensation for a default that had not yet been obtained? That's section 1504C and D of the foreclosure statute. This situation was anticipated and provided for by the law. The statute specifically says and provides that if a plaintiff follows the statutory short form template, its allegations are deemed and construed to essentially include an accounting for all escrow advances, taxes, insurance, whether having been come due already or whether coming due in the future. It's essentially an ongoing accounting that is included as part of the complaint. The plaintiff made much of the fact that the first two lawsuits requested advances, but who could say for certain whether they would have actually taken a judgment for escrow advances. The statute already provided for that. That was something that the complaint was deemed to include even if the plaintiff had not specifically requested it. How does that work as a practical matter? How do you receive reimbursement for something that hasn't happened yet? I understand the conceptual theory you're advancing, but how would one in the real world obtain compensation for something that hasn't occurred? That's provided for, I think, in the foreclosure process. The foreclosure judgment would include all amounts then missed or due for escrow advances. After the foreclosure judgment, those amounts can't be included in the judgment anymore if they are incurred or come due after judgment, but they can be accorded to the lender in the order confirming the foreclosure sale. As long as the foreclosure is pending or prior to the final order in the foreclosure, which is the order confirming the judicial sale, those amounts can be collected. Those personal entry plaintiffs claiming wages, lost wages, certainly they couldn't theoretically at the time the complaint is filed and they're requesting lost wages up until that point collect. They couldn't make an allegation that those lost wages have already come to, but they certainly can include a request for future lost wages as part of the personal entry claim and that's routinely granted. Essentially, it's an accounting for lost wages coming due in the future and that's certainly provided for in personal entry litigation, certainly provided for here under the foreclosure statute. What do you make of this line from the last case cited at 288 Illinois Appellate 3rd, 222? Thus, an earlier judgment relating to a course of conduct does not bar claims for continuing conduct complained of in a second lawsuit that occurs after the judgment has been entered in the first lawsuit. How does that square with your argument? Well, I think it's because the argument here is that this is a single default. There are essentially no new operative facts. There may be new facts. There may be overlapping facts. There may be facts that occur just as a lost wage claim would continue to increase after the filing of a personal entry lawsuit. They may change and the amounts may increase, but essentially it's a single default and that's the default in the mortgage payment, which under Section 2 of the mortgage is required to be principal interest as well as amounts for taxes and insurance that come due. So, that's the defendant's, the borrower's obligation under the mortgage is to make that single unitary mortgage payment. There's not a separate and different obligation to make those payments as they come due. As part of the agreement between the parties, that was how those payments were to be made as that single unitary payment and that was the single unitary default that we're talking about here. We're really not talking about a continuing course of conduct or any new operative facts. Again, maybe new facts or slightly different facts or increasing amounts, but not new operative facts under the transactional test. Okay, so I don't know if this is unique to mortgage foreclosures, but let me just give you this one final example. Suppose you have a contract that runs for 20 years. A particular dispute about the satisfactory performance occurs at five years into the contract. Then the parties have another dispute 10 years into the contract. There may be lawsuits that were dismissed. So, basically then you're saying if there's another clear default, let's say five years later, 15 years into the contract, then the defendants would be forever immunized from that contact or being held that violation and being held responsible for that breach, right? Yes, if under the transactional test, it's considered to arise out of the same group of operative facts. So, I think that controls the inquiry here. The plaintiffs tried to ignore the transactional test and didn't really address the factors, but I think that's the difference here and that's the answer to that question. And certainly, if those issues were examined under the transactional test, that would provide the answer whether they are, in fact, a different cause of action for purposes of the single refiling rule. Under the transactional test, if they stop paying the mortgage after the 15th year, there's nothing anybody can do. That's your argument? I'm sorry, I don't understand the question. Well, if you're immunized, that there's a default of five years, a default of 10 years, and then there's one in 15, you seem to be saying that the defendants are forever immunized from any responsibility. In the case of a mortgage, they would never be accountable for paying the mortgage again, correct? Well, in this case, I would say that's correct. That's our argument in this case. But as plaintiff's counsel mentioned, there is the possibility of an entirely separate default that wouldn't be covered by the transactional test. And for example, I think that would reasonably be the due on sale clause in the mortgage. And that allows the lender to declare a default under the mortgage if there is a transfer, if the defendants were to sell the without notifying the lender. And usually that permission is contingent upon paying off the lender's lien. But if they decided not to stay there, they could just live there and never make a mortgage payment, correct? Why would they sell it? Theoretically, yes. Okay, that's all I have. Thank you. Thank you. Justice Zinoff, do you have any questions? Yes, I do. You talked about a single default in the mortgage payment being principal interest and the tax and an insurance. But weren't there two different default provisions in this mortgage, 9A1, which pertain to principal and interest, and 9A2, which pertain to apply to tax and insurance payments? So how do you square this theory of a single default with the fact that there are two different default provisions in the mortgage? First, I would note that the plaintiffs didn't raise this argument at the trial court level. I think it's forfeited. They've raised this argument of two different default provisions in their reply brief on appeal. So certainly we haven't had a chance to fairly address that. And I believe it has been forfeited. But to address the issue, I think that's demonstrated by the first two foreclosure lawsuits. The default claimed there was a default for the mortgage payment for principal, interest, taxes, and insurance for advances under the mortgage. So the plaintiff treated it as a unitary single default. And that's what the contract provides for. The contract essentially takes those two general different default provisions and adds a more specific provision that combines them into a single unitary obligation under the mortgage to make that payment. The defendants would not have been permitted to separately pay the principal and interest, and then on their own, without paying into escrow, separately pay the real estate taxes and insurance. Both the mortgage and the lender, as a practical matter, required that it be a single unitary payment. Okay. And then I just have one other question. To be sure I understand what you were telling us about the fact that there is an accounting. So if, for example, there's a complaint for foreclosure in 2017 and a judgment for foreclosure in 2017, but the sale doesn't occur, really, the confirmation of sale doesn't occur until a date in 2018. Are you saying that if the 2018 taxes came between the date of the judgment of foreclosure and the date of the confirmation of sale and the final orders in this case, that those 2018 tax and insurance payments would be included as due and owing to the lender? Yes. That could form a part of the either NREM or personal deficiency sought. And what provision of the statute provides for that again, please? And that's section 1504, C, D, and I believe E. Okay. Thank you. Those are all my questions. Thank you. Council, you said something about there were no further payments made by your client, and I'm not quite sure what's the significance of that. Is it significant? I think it is because potentially that would be a new operative fact. Under the transactional test, the single refiling rule, and just to clarify this, the single refiling rule utilizes the transactional test. It's essentially the same test that's utilized for res judicata. So the two prior dismissals wouldn't themselves be res judicata, but they simply, the single refiling statute utilizes the same test to see if they would be a violative of the single refiling rule of statute. I'm sorry, but this seems to be your client hasn't made a payment since the last two lawsuits or three lawsuits were filed, and that is somehow significant. And then you suggest that it might have some transactional effect. What transactional effect it would have other than the fact that your client didn't make payments? Sure. Well, it would be a new operative fact. It would be a new payment. And again, I would analogize to a different area of law. Or a new payment not paid. You said there were no further payments. You didn't say there were further payments. Correct. There were no further payments after their default in 2011. Which, according to your logic, was one default, even though it was a continuing fault, wouldn't you admit over time? In other words, it wasn't interrupted by a payment, so therefore it's a constant continuing fault? Or is it just a one-time default that doesn't recur? I think it's a one-time default that doesn't recur. Well, if that's the case, then how does res judicata apply? Well, res judicata itself doesn't apply, but it's the same test. And the case law indicates that for purposes of considering whether a complaint is a refiling under Section 13217, they utilize the same test as res judicata. So it's not itself res judicata because there hasn't been a final adjudication. It's the effect of the two prior voluntary dismissals under the single analysis, but it's a different legal issue. Let's take an expansion of Justice Hudson's hypothetical. Let's assume there's a breach and there's a lawsuit brought on the note, on the mortgage, on both, on either, and your client pays the amount that's due in owing in order to bring the loan back into good standing. And then a year or two later, another lawsuit is filed, and your client pays all that is necessary to bring it to good standing. And then another two years or six months later, who knows? It could be the next payment that's due that there could be a breach. It doesn't happen. The payment isn't made. And you, as the astute lawyer, would get up before the court and say, Your Honor, I want this dismissed because this is the third filing. Correct? No, I don't think so, Your Honor. And that's because reality had changed. The loan had been reinstated. And that was noted by the Supreme Court in Cobo. The Supreme Court noted in Cobo that- I didn't say anything about reinstated. I said the payments were made and the cause was non-suited or dismissed. That's the criteria you use to establish the fact that the principle of res judicata, which is not the one that's actually used, but is supposedly an allegory or a parallel for the relief that you're supposed to be getting, is based simply on the fact that this was a third filing. It has nothing to do with the implications of what happened before and whether or not there was anything other than a filing and a dismissal or a non-suit. So I don't see any difference in the logic, in the hypothetical I gave you. Who cares if the loan is reinstated or not? It's the third filing. Who cares if the mortgage- pardon me, the insurance and the taxes haven't paid? It's the still- it's still the same default. It's still the same breach. So why doesn't it make also sense that in my hypothetical, you're home free or your client is? Reinstatement of the loan is a non-sequitur. It's immaterial. It is tangential. It's a red herring. I'm not expecting a concession or an admission, but the point is, is that the logic that you keep espousing is counterfactual. That's the simple phrase to this whole thing. You keep saying the things that over time are redundant, which would be continuing towards, as Judge Hudson suggested, that could result in injunctive relief in addition to civil damages, you suggest is just one instance of one breach. Now you've changed slightly in the last five minutes and called it a single breach. So therefore the other ones must be subsequent. But the point is, is that your argument, at least insofar as Justice Zinoff pointed out, there are two types of breaches here, and you've taken the two, the principal interest vis-a-vis taxes and insurance, and you combine these things into a melange through a merger that there's no support for, at least I'm not aware of any citation with authority that says that principal and interest and taxes and insurance are one and the same thing. If they were, why would there be two sections, two paragraphs? I don't have any other questions. Are there any other questions insofar as the panel is concerned? No. Okay. Thank you. Mr. Cassidy, you may close, or I should say you may rebut, Mr. McGee. Thank you. You know, I wanted to just hit on some of the points that Mr. McGee made. First, that the plaintiff sidestepped the River Park test. No, we didn't sidestep it. It's that we cited the Cobo case, which just confirmed the continuing use of the River Park transactional test. So I didn't cite the 1988 or 89 River Park case because we have a newer one, which is the Cobo case, and it held the same thing, that the transactional test applies and that new operative facts will give rise to a new cause of action. So I just wanted to touch on that very briefly. Also, counsel said that Illinois law doesn't permit people to be subject to endless lawsuits. Well, yeah, it does if there are endless factual patterns that continue to arise. So if a person continues to do things that cause, you know, that are factually give rise to causes of actions, then they can and should be sued multiple times. You know, if they're in seven car accidents, they should be sued seven times. I mean, there's no end to the number of lawsuits that can be brought as long as the facts continue to change. And as long as there are new factual instances that occur, well, then there are new causes of action, and therefore litigation will go on as long as there are new causes of actions that arise from new facts. Also, counsel mentioned the statute of limitations. I just wanted to mention that the statute of limitations on a mortgage foreclosure runs from the acceleration, which is why the statute of limitations isn't really an issue. And it's mentioned, so I just want to respond to it. The statute of limitations should run from the date of the default under 9A2, which is the date that they did not make their tax and insurance payments, or to reimburse the plaintiff for those payments. And while I'm on 9A2, counsel also said that the plaintiff did not raise that 9A2 argument and that it's forfeited, that we didn't raise it in circuit court. But our complaint itself at paragraph K indicates mortgagor is in default pursuant to paragraph 9A2 by failing for a period of 30 days to perform the obligations and security instrument. So it was the basis of our lawsuit. So I don't see how we could have possibly forfeited an argument as to 9A2 when it was the entire basis of our lawsuit. I think that, I don't remember which of the justices was asking my opposing counsel, but there was some discussion of whether a new payment would be an operative fact. And counsel, defendant's counsel said that yes, it would be. And I agree that if a new payment is made, then there's a new fact that has happened, whether that payment is principal and interest or tax and insurance, whatever it is. If a payment is made, that's a new operative fact. But this situation where we have the failure to make a tax and insurance payment, that's an operative fact also. So this is a novel case. There is no case that I could find, and I don't think counsel could find one either, that has this tax and insurance default issue at the heart of the case. So what we have to look at is whether the operative facts changed or whether there were, sorry, not that they changed, but whether there were new operative facts. And there are, and we brought a new case based on those operative facts, those new operative facts. I just briefly wanted to mention also that if the circuit court felt that the plaintiff failed to show that a different set of operative facts existed in this complaint as opposed to the three prior complaints, then the circuit court should not have dismissed the case, but instead should have given the plaintiff the opportunity to re-plead. You know, even allowing amendment is one thing, but dismissing the foreclosure without prejudice is something different. And plaintiff requested in his motion to reconsider that the circuit court dismiss the case without prejudice so that it could more properly plead the dates. The circuit court took great issue with the fact that there were no dates in the complaint of the default. Well, we can show that there was a 2018 default, and we had intended to show it at prove up, but the court didn't let us get that far. We can prove a set of facts that entitle us to relief. And just in closing, plaintiff respectfully requested this court reverse the June 20, 2019 order dismissing the complaint and remand this case for further proceedings, or alternatively that the court reverse that part of the court order which dismissed the complaint with prejudice. And I'm happy to take any questions if you have any based on what I've said. Justice Hudson, do you have any questions? I have no additional questions. Justice Enoff, do you have any questions? No. I do not. Is it possible that if a complaint is filed based upon a default or an alleged default, and the acceleration clause is activated, that if the homeowner fails to make the entire payment for the entire loan in the next month, that the foreclosure will go forward? Or is he only required to make the one payment? Once the loan is accelerated, then the borrower or the mortgage borrower in this case is required to make the entire payment. The loan has been called due in full once it is accelerated. So the borrower can reinstate, and there's a particular statute on reinstatement which doesn't apply here because they didn't do it. But the borrower can make the payment that would catch up, you know, that would bring the loan current. So if the borrower brings the loan current, then they do not need to pay off the entirety of the loan, in this case somewhere around $150,000. You know, they may have only been passed due by seven or eight months, which could be $20,000 or so. So if they make that $20,000 payment, then the loan will be brought current, and there is no more default. Does that answer your question? It does to the extent that it implies that the acceleration clause, once it kicks in, is not an automatically executed protonized egg, meaning that once it is activated, it can be unprotonized, or it can go back to a clear white instead of a white white. And so unlike Sigler and some other cases that suggest that once the acceleration clause is made, it can never be undone, and that's in part why the legal fiction about why it's the same breach and it's the same default and all that is based upon a premise which apparently has to have certain things happen before it's set in stone or it becomes the actual acceleration. So you've answered my question well enough. Thank you very much. I have no further questions. Are there any other questions? I have no further questions. I don't have any either. Okay, thank you. It's been an interesting case. We will take the case under advisement and render disposition in appropriate time. I now declare the oral argument closed and terminated. Thank you. Thank you. Thank you.